**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY | : | |
| | : | |
| Plaintiff | : | Case No. 07-0356-S |
| v. | : | |
| | : | |
| BASSETT BOAT CO., INC. | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO TRANSFER VENUE OF**
**DEFENDANT BASSETT BOAT COMPANY, INC.**

Pursuant to LR Cv 7(a), the defendant, Bassett Boat Co., Inc. ("hereinafter "Bassett"), files this memorandum of law in support of its Motion to Transfer Venue. For the reasons set forth herein, and pursuant to 28 U.S.C. § 1404(a), fairness and equity require that this case be transferred to the United States District Court for the District of Massachusetts, Springfield (Western) Division. Attached hereto are the affidavits of Diane Bassett Zable and Richard M. Levy, Esq., in further support hereof.

1. Statement of Relevant Facts

Bassett is a family-owned and operated retailer of new and used boats. See Affidavit of Diane Bassett Zable (hereinafter "Bassett Aff."), ¶ 2. It is incorporated in Massachusetts and has its principal place of business at 121 West Street, Springfield, Massachusetts. Bassett Aff., ¶ 3. In addition to its corporate office in Springfield, Bassett operates showrooms in Quincy, Massachusetts; Westbrook and Cos Cob, Connecticut; and Warwick,

**ORAL ARGUMENT REQUESTED**

Rhode Island, and maintains a service center in Ludlow, Massachusetts. Bassett Aff., ¶ 3. Bassett's president and sole shareholder, Diane Bassett-Zable, resides in Springfield, Massachusetts, and works out of the company's corporate office in Springfield. She is responsible for virtually all the company's operations. Bassett Aff., ¶¶ 3-4. In addition, her husband, Paul Zable, is an officer of the company and oversees Bassett's service department. He also works out of Bassett's Springfield headquarters. Bassett Aff., ¶¶ 2, 6, 11.

In April 2007, a severe storm struck Bassett's facility in Warwick, Rhode Island, causing varying levels of damage to approximately 15 new and used boats in Bassett's inventory. Bassett Aff., ¶ 5. Among the boats damaged were a Viking 57' flybridge (hereinafter the "Viking"), which was sunk during the storm and ultimately declared a constructive total loss, and two Sea Ray motor yachts (hereinafter "the Sea Rays"), which at the time of the storm had been sold but not yet delivered to their respective purchasers. Both of the Sea Rays suffered substantial damage as a result of the storm, and their contract purchasers refused to close on the transactions as a result. The remaining vessels affected by the storm suffered varying degrees of damage. Most of the boats have now been repaired. Bassett Aff., ¶ 5.

At the time of the April 2007 storm, Bassett was insured pursuant to a Yacht Dealer/Marina Operations Insurance Policy (hereinafter the "Policy") issued by Plaintiff New Hampshire Insurance Company (hereinafter "NHIC"). The Policy contains no choice-of-law or forum selection clause. Bassett Aff., Ex. A (copy of Policy). Bassett duly and

timely notified NHIC of the loss, and since the time of said notification, has been attempting to obtain compensation from NHIC on account of its substantial damages.

Although NHIC has made some payments to Bassett on account of the loss, several disputes have arisen regarding the amount and extent of NHIC's liability under the Policy. The issues in controversy between the parties do *not* involve the extent to which any of the vessels were damaged, but rather the proper interpretation of the Policy, which is extremely vague, and therefore the extent and amount of NHIC's obligation to compensate Bassett for its losses.

For example, the Policy provides that, with respect to unsold boats (such as the Viking), NHIC shall compensate Bassett for not more than "the actual cash value taking into account proper deduction for depreciation and in no event shall [NHIC] be liable for more than the cost to repair or replace the same with like kind and quality." There is no dispute between the parties that the Viking was a constructive total loss; the issue is how much NHIC is obligated to pay Bassett as a result of that loss. NHIC has taken the position that the "actual cash value" of the vessel cannot exceed the original wholesale price that Bassett paid for the boat, even if the same vessel – or one of like kind and quality – can no longer be obtained for that price. With respect to boats that were sold but not delivered (such as the Sea Rays), the Policy provides that NHIC shall compensate Bassett for not more than "the net selling price less all discounts." As with the Viking, there appears to be little dispute about the nature and extent of the damage to each boat; instead, NHIC has taken the position that its liability with respect to the Sea Rays is limited to the cost of repairing those boats (and that Bassett is not entitled to recover its full repair rates in connection therewith), even

though NHIC's own policy states that the amount of its liability is tied to the net selling price of the boat, and not the cost of repairs.

For some months prior to the commencement of this suit, Bassett believed that NHIC was working with it in good faith to resolve their differences through negotiation, and those discussions were ongoing at the time NHIC unexpectedly served this lawsuit on Bassett. Although Bassett had long considered the option of filing a lawsuit in Massachusetts against NHIC to resolve the ongoing coverage dispute, Bassett withheld from filing suit while the negotiations were ongoing in the hopes of avoiding litigation. Bassett Aff., ¶ 9. Bassett was surprised not only by the filing of the lawsuit, but also by the facts that it was filed in Rhode Island – where virtually none of the principals are located – and that it was filed with this Court in September 2007, but not served on Bassett until January 2008. Notably, at the time the lawsuit was served on Bassett, NHIC's counsel forwarded the complaint to Bassett's counsel in Connecticut with a cover letter stating:

> Please do not take [the filing and service of the declaratory judgment lawsuit] as a signal that New Hampshire Insurance wants to stop working to resolve this matter amicably. As you previously mentioned, we have been able to make considerable progress over the past months and I hope to continue to do so. Please let me know if Bassett wants additional time to respond to the complaint while we try to resolve any remaining disagreements.

<u>See</u> Affidavit of Richard M. Levy, Esq., ¶ 6 and Ex. A (copy of letter).

2. <u>Governing Law</u>

A district court may transfer the venue of a civil action pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A showing that the transfer of a case would be more convenient

to the moving party "is not sufficient to grant § 1404(a) relief, where the transfer would merely shift the inconvenience to the other party." Brian Jackson & Co. v. Eximias Pharmaceutical Corp., 248 F. Supp. 2d 31, 38 (D.R.I. 2003).

In addition to the convenience of the parties and witnesses, the court also may consider a number of private and public interests in determining whether a case should be transferred. McEvily v. Sunbeam-Oster Co., 878 F. Supp. 337 (D.R.I. 1994). The private interests include:

> (1) the availability of compulsory process for attendance of unwilling witnesses;
> (2) the cost of obtaining attendance of willing witnesses;
> (3) the relative ease of access to sources of proof;
> (4) the possibility of a view of premises, if such a view would be appropriate to the action; and
> (5) all other practical problems that make trial of a case easy, expeditious and inexpensive.

Id. at 343. The public interests include:

> (1) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;
> (2) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law;
> (3) the local interest in having localized controversies decided at home;
> (4) the unfairness of burdening citizens in an unrelated forum with jury duty; and
> (5) administrative difficulties flowing from court congestion.

Id. at 344.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Brian Jackson & Co., 248 F. Supp. 2d at 38 (quoting Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). Since the "plaintiff's choice of forum is generally entitled to great weight, … the burden is on the movant to make a strong

showing that transfer of venue is appropriate under the circumstances." McEvily, 878 F. Supp. at 344. The burden is lightened, however, "when a plaintiff has not brought suit on his 'home turf' or at the site of the activities at issue in the law suit," and when issues of contract interpretation – rather than the situs of activities under the contract – are paramount. Id. Further, courts will not reward a party which engages in a "race to the courthouse door by filing suit during ongoing settlement negotiations," since parties "should be encouraged to enter into settlement discussions without fear that [the other party] will use the opportunity to file a preemptive suit in a district of its own choosing." Ontel Products, Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1149 (S.D.N.Y. 1995); see also Feinstein v. Brown, 304 F. Supp. 2d 279, 282 (D.R.I. 2004) (recognizing exception to first-filer rule in case where "first-filed action is the result of a preemptive 'race to the courthouse.'").

3. Transfer of This Case to the District of Massachusetts is Warranted

Virtually all of the factors that this Court must consider in determining whether to transfer this case to the District of Massachusetts either militate in favor of transfer or are neutral. None of the factors favors maintaining this case in Rhode Island. Further, to the extent NHIC's choice of venue normally would be entitled to "great weight," it should be given little or no weight here because (i) Rhode Island is not NHIC's home state, (ii) the site of Bassett's physical loss is of little importance to the issues of policy interpretation at issue in this case, and (iii) NHIC filed this suit preemptively during settlement discussions and thereby prevented Bassett from filing suit in the District of Massachusetts, which has a much closer connection with the parties and the issues. As a result, this case should be transferred to the District of Massachusetts.

a. This Case Could Have Been Brought in Massachusetts

Section 1404(a) permits the transfer of a case only to a "district or division where it might have been brought." It is undisputable that this action could have been brought in the District of Massachusetts. Because Bassett is a Massachusetts corporation with its principal office in Springfield, Massachusetts, the federal district court in Massachusetts has personal jurisdiction over it. Further, NHIC specifically alleges in its Amended Complaint that it is authorized to do business in the Commonwealth of Massachusetts, Amended Complaint ¶ 2, and thus Massachusetts courts have jurisdiction over it as well. Finally, Bassett's residence in Massachusetts would result in venue being proper in that district pursuant to 28 U.S.C. § 1391(a).[1]

b. Transfer Will Promote the Convenience of Parties and Witnesses

It is also largely indisputable that, although jurisdiction and venue technically may lie in Rhode Island, Massachusetts is the more convenient forum for the parties and witnesses necessary to the resolution of this dispute. Bassett's corporate headquarters are located in Springfield, and the officers and employees who are expected to testify on its behalf with respect to the Policy, the loss, and the damages suffered by Bassett as a result of the loss, all reside and work in Springfield. Among the Bassett officers and employees who are likely to testify are: (i) Diane Bassett-Zable, who is president of the company, is involved in virtually all of its affairs, was involved with procuring the Policy, and has been intimately involved with the coverage dispute; (ii) Paul Zable, who oversees the company's

[1] "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State …." 28 U.S.C. § 1391(a).

service department, was primarily involved with procuring the Policy, and would be expected to testify about the Policy, as well as damage to and cost of repairing the damaged vessels; and (iii) Sheldon Collins, who is the company's controller and would be expected to testify about financial matters, sales that were pending at the time of the loss, and the like. All three of these individual live in Springfield and work out of Bassett's Springfield corporate headquarters.

While the convenience to these individuals of a transfer of this case to Springfield is obvious, the court also should consider the significant *inconvenience* to these individuals of attending court in Providence. Bassett is a relatively small, family-run business, and the requirement that the company's key personnel travel to and from Providence for depositions and/or court hearings would be extremely disruptive and costly. Further, since the nature and extent of the damage to any particular vessel does not appear to be in dispute, Bassett does not expect that either the plaintiff or the defendant will need to call any of its Rhode Island employees to testify. If that becomes necessary, however, Bassett will make those employees available for deposition and/or trial testimony in Springfield.

While inconvenience to the *nonmoving* party often leads courts to refuse to transfer cases, transfer in this case will cause *no inconvenience* to NHIC. As set forth in its Amended Complaint, NHIC is a Delaware corporation with its principal place of business in New York, New York. Although the Complaint states that NHIC "is authorized to do business in the State of Rhode Island," Amended Complaint ¶ 2, it does not appear that NHIC has any physical presence in Rhode Island, and all of the representatives of NHIC with whom Bassett has dealt in connection with this loss (other than NHIC's attorneys) are

in New York. Further, NHIC specifically alleges in its Complaint that it is authorized to do business in the Commonwealth of Massachusetts, Amended Complaint ¶ 2, and it makes this allegation undoubtedly because it is aware of the strong connection between the Policy and the Commonwealth of Massachusetts (including the fact that the Policy was sold to a Massachusetts business, and its provisions likely are governed by the substantive law of Massachusetts). Accordingly, the convenience of the parties favors transferring this case to the District of Massachusetts.

The consideration of the convenience of the witnesses also appears to favor transfer. Although this case is only in its infancy and Bassett has not yet identified its intended witnesses, it is anticipated that NHIC's adjuster, William Robbins, may be a witness in this case. Upon information and belief, Mr. Robbins is an independent marine adjuster who adjusted this loss for AI Marine Adjusters, Inc., of 175 Water Street, New York, New York, which served as the adjuster for NHIC. Upon information and belief, Mr. Robbins resides in Haddam, Connecticut, which is approximately 88 miles from Providence and 54 miles from Springfield. Thus, the transfer of this case to Springfield will save Mr. Robbins approximately one-half hour of driving time each way.

Based on the foregoing, if this case remains pending in this district, it is a virtual certainty that <u>all</u> parties and witnesses will be required to travel a significant distance to attend any depositions or court hearings. If the case is transferred to Springfield, however, the primary officers and employees of Bassett will not need to travel at all, while the primary employees of NHIC, all of whom appear to be based in New York, and NHIC's adjuster, will not need to travel quite as far. Accordingly, the convenience of the parties and

anticipated witnesses favors transfer of this case to the District of Massachusetts, Springfield Division, and it does not appear that any party or witness will be inconvenienced by such a transfer.

c. The Relevant Private Interests Favor Transfer

Although the convenience of the parties and witnesses is the primary consideration for transfer, consideration of the relevant private interests also demonstrates the propriety of transfer. While Bassett is not aware of any person who would qualify as an "unwilling witness," it is indisputable that the cost of obtaining the attendance of *willing* witnesses favors transfer to Springfield. As noted in the previous section, the continued pendency of this case in Providence assures that all parties will incur *greater* expense and burden in attending court. If the case is transferred, however, the cost to Bassett of obtaining the attendance of willing witnesses will be significantly reduced, while the cost to NHIC likely will be somewhat reduced. In both cases, transfer is warranted.

The third and fourth factors are not particularly relevant to the analysis. As noted in the previous section, there appears to be no dispute as to the nature and extent of the actual physical damage to the affected vessels. As a result, a view of the vessels or the boatyard in Warwick will not be necessary, and the anticipated sources of proof are Bassett's files relating to these boats. These files are not voluminous and are largely portable, but they nonetheless are maintained at Bassett's headquarters in Springfield. Thus, to the extent the third factor is relevant, it favors transfer.

The final private interest examines "all other practical problems that make trial of a case easy, expeditious and inexpensive." Although Bassett is not aware of any practical

problems aside from the significant inconvenience, unnecessary expense, and disruption to its business that it will suffer if required to litigate this case in Providence, Bassett points out that litigation of this case will be easier, more expeditious, and less expensive for Bassett if the case is transferred to Springfield, and at least as easy, expeditious and inexpensive for NHIC. In short, no factor favors keeping this case in this district.

d. The Relevant Public Interests Favor Transfer

The relevant public interests in this case strongly favor transfer to the District of Massachusetts. In analyzing the public factors, it is critical to remember that, although this case arises out of a storm that damaged vessels located in Rhode Island, the factual and legal issues involved revolve around the interpretation of an insurance policy, which is an issue of contract law. The Policy does not contain a governing law provision, but since Bassett is located in Massachusetts and NHIC is based in New York, the substantive law of one of those two states likely governs this dispute, while Rhode Island law almost certainly does not apply. If Massachusetts law applies, this first public factor, which is the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, favors transfer. If New York law applies, then neither Rhode Island nor Massachusetts courts would have an advantage. In neither event, however, would Rhode Island courts be preferred over those of Massachusetts.

The second factor examines "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law." In this case, the court almost certainly will need to grapple with the issue of which state's laws apply during the course of this case. Although Rhode Island and Massachusetts have somewhat differing choice-of-law rules;

compare Hartford Casualty Ins. Co. v. A & M Assocs., 200 F. Supp. 2d 84, 87 (D.R.I. 2002) (deciding a choice-of-law dispute in a declaratory judgment action over the interpretation of an insurance policy under Rhode Island choice-of-law rules), with Reicher v. Berkshire Life Ins. Co., 360 F.3d 1, 5 (1st Cir. 2004) (examining Massachusetts choice-of-law rules); Massachusetts has developed a strong policy with respect to choice-of-law analysis in cases involving disputes over multistate insurance policies, which is precisely what the present case involves. As the First Circuit has recognized, the Massachusetts Supreme Judicial Court has "articulated a clear preference for looking to the law of one state to govern the interpretation of … multistate [insurance] policies. The SJC reasoned that the expectations of the parties as well as commercial realities require that the language in a single set of insurance policies should mean the same thing in every state." Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 30-31 (1st Cir. 1997) (citing United Techs. Corp. v. Liberty Mut. Ins. Co., 407 Mass. 591, 555 N.E.2d 224, 227 (1990)). In Millipore, the court held that Massachusetts law applies to the interpretation of an insurance policy covering sites in multiple states where Massachusetts was the insured's state of incorporation and principal place of business, most of the policies were negotiated and administered there, and three of five insured sites were located there.

Although the Rhode Island Supreme Court ultimately may articulate the same policy, it does not appear to have done so yet. As a Massachusetts corporation with its principal place of business in Massachusetts and the majority of its business operations there, Bassett has a legitimate expectation that the Massachusetts rule with respect to choice-of-law analysis in a dispute over a multistate insurance contract will be applied in any dispute over

the interpretation of the Policy, and that the insurer will not be permitted to forum shop for a different and perhaps more favorable rule. The transfer of this case to the District of Massachusetts, therefore, would ensure that the strong public policy of Massachusetts as articulated in United Technologies and Millipore will be achieved.

The third and fourth public interests – the local interest in having localized controversies decided at home, and the unfairness of burdening citizens in an unrelated forum with jury duty – can be taken together. The controversy in this case is over the interpretation of an insurance policy that was issued by a New York-based insurer to a Massachusetts corporation. The fact that the insured has a sales facility in Rhode Island and the incident that gave rise to the loss occurred at that facility does not change the fact that Massachusetts has a much stronger local interest in this case than does Rhode Island. The strength of this interest can be demonstrated, for example, by the existence of the Massachusetts public policy detailed in the previous paragraph relating to choice-of-law analysis in disputes involving multistate insurance policies. Likewise, to the extent this case results in a jury trial, the issues likely to be decided by the jury are more closely related to Massachusetts – which is the home state of the insured – than Rhode Island. As a result, a Rhode Island forum is more "unrelated" to the controversy, and a Rhode Island jury will be more burdened by deciding the controversy than a Massachusetts jury. Again, these factors favor transfer.[2]

e. NHIC's Choice of Forum is Entitled to No Weight Because NHIC Filed this Action

[2] Bassett will not presume to opine on the "administrative difficulties flowing from court congestion" in either Massachusetts or Rhode Island federal courts, and thus does not address this fifth factor.

While Settlement Discussions were Ongoing

Although a plaintiff's choice of forum typically is entitled to "great weight," this court should place no weight on NHIC's choice of forum because the course of events leading up to the filing and service of this lawsuit strongly suggests that NHIC filed when it did to ensure that this dispute would be litigated in Rhode Island, and thus cause inconvenience to Bassett. Although the federal courts have adopted a rule that generally favors the "first filer" in situations where both parties have filed suit in different courts, see, e.g., see also Feinstein v. Brown, 304 F. Supp. 2d 279, 282 (D.R.I. 2004), there are important exceptions to this rule. One of these exceptions is when a party uses the period during which settlement discussions are ongoing – and thus the other party refrains from filing suit – to "file a preemptive suit in a district of its own choosing." Ontel Products, Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1149 (S.D.N.Y. 1995). "Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit. Otherwise, potential plaintiffs would be discouraged from first attempting to resolve their claims without resorting to litigation." Id. at 1150; see also Feinstein, 304 F. Supp. 2d at 282 (recognizing exception to first-filer rule in case where "first-filed action is the result of a preemptive 'race to the courthouse'"). The district court went on to explain the sound policy reasons for this exception: "The existing state of federal court dockets indicates the continuing need to facilitate the attempts of potential plaintiffs to settle before initiating litigation. This could hardly be accomplished if such parties knew that by first attempting

settlement they were risking the loss of the first-filed rule's benefit." Id. Notably, the court explained that such "improper filings … often take the form of declaratory judgments." Id.

In the present case, it cannot be disputed that both parties were aware that their dispute could end up in litigation. As set forth in the Affidavit of Diane Bassett-Zable, Bassett had seriously considered filing suit against NHIC in Massachusetts to recover its substantial losses, and on quite a few occasions had expressly or impliedly threatened NHIC with suit. Bassett withheld from filing suit, however, and decided instead to allow the settlement discussions to run their course before taking this drastic step.

As for NHIC, however, the evidence strongly suggests that it used Bassett's forbearance to ensure that any suit arising out of the dispute would be litigated in Rhode Island, and thereby preclude Bassett from filing in Massachusetts. First, the letter sent by NHIC's counsel transmitting a copy of the lawsuit to Bassett's counsel makes it clear that settlement discussions were ongoing at the time the suit was filed and served. That letter stated, in part:

> Please do not take [the filing and service of the declaratory judgment lawsuit] as a signal that New Hampshire Insurance wants to stop working to resolve this matter amicably. As you previously mentioned, we have been able to make considerable progress over the past months and I hope to continue to do so. Please let me know if Bassett wants additional time to respond to the complaint while we try to resolve any remaining disagreements.

Additionally, it cannot be coincidental that NHIC *filed* the lawsuit and obtained a summons on September 19, 2007, but did not *serve* the suit on Bassett until January 17, 2008 – only days before the expiration of the 120-day service period provided for in Fed. R. Civ. Proc. 4(m). Although another explanation is possible, the most likely explanation for this scenario is that NHIC wanted to make sure it secured its choice of forum, and thus it filed the suit

while the settlement discussions were ongoing so it could be ready at a moment's notice to serve the suit and ensure venue in Rhode Island. As the 120-day period was about to expire, however, NHIC was forced to serve the suit to avoid dismissal, but it sent the letter in an effort to prevent the commencement of the suit from interfering with the settlement discussions.

The foregoing facts reveal NHIC's attempt to gain what it apparently perceived to be a strategic advantage by filing in Rhode Island – well distant from Bassett's corporate office and highly inconvenient to Bassett's officers and employees. For its part, Bassett had ample opportunity to file suit in Massachusetts, but chose to forbear from doing so during settlement discussions. NHIC should not be rewarded for its conduct in this regard by its choice of forum being given any weight in the consideration of whether venue is more appropriate in this district or in the District of Massachusetts. As set forth in great detail above, Massachusetts is the far more appropriate forum for the litigation of this action. Accordingly, Bassett's motion to transfer venue should be granted and this case should be transferred to the District of Massachusetts, Western Division for further proceedings.

DEFENDANT, BASSETT
BOAT COMPANY, INC.
By Its Attorneys

/s/ *Gardner H. Palmer, Jr.*
Gardner H. Palmer, Jr., Esq., No. 3707
Law Office of Joseph M. DiOrio, Inc.
10 Dorrance Street, Suite1200
Providence, Rhode Island 02903
Phone: 401-632-0911
Fax: 401-632-0751
email: ghpalmer@dioriolaw.com

*/s/ Richard M. Levy*
Richard M. Levy, Esq. (*pro hac vice*)
KROLL, McNAMARA, EVANS
& DELEHANTY LLP
29 South Main Street
West Hartford, CT 06107
Tel. (860) 561-7070
Fax. (860) 561-7075
E-mail: rlevy@kmelaw.com

May 6, 2008.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of May 2008, a copy of the foregoing Memorandum of Law and attached affidavits were filed electronically and served by first-class U.S. mail, postage prepaid, on anyone unable to accept electronic filing, including the following:

Brooks R. Magratten, Esq.
Michael J. Daly, Esq.
VETTER & WHITE
20 Washington Place
Providence, RI 02903

Andrew C. Coulam, Esq.
TAYLOR, DUANE, BARTON & GILMAN, LLP
10 Dorrance Street, Suite 700
Providence, RI 02903

Notice of this filing was sent by electronic mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ *Gardner H. Palmer, Jr.*
Gardner H. Palmer, Jr.,