**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY | : | |
| Plaintiff | : | Case No. 07-0356-S |
| v. | : | |
| BASSETT BOAT CO., INC. | : | |
| Defendant | : | |

**AFFIDAVIT OF DIANE BASSETT ZABLE IN SUPPORT OF DEFENDANT BASSETT BOAT COMPANY, INC.'S MOTION TO TRANSFER VENUE**

The undersigned, Diane Bassett Zable, being duly sworn, hereby deposes and states as follows:

1. I am over the age of eighteen (18) years and I understand and believe in the obligations of an oath. I have personal knowledge of the facts and matters set forth herein. I make this affidavit in support of Bassett Boat Company, Inc.'s motion to transfer this case to Springfield, Massachusetts.

2. I am President of Bassett Boat Company, Inc. ("Bassett"). Bassett is a family-owned and operated business incorporated in the Commonwealth of Massachusetts. Bassett was started in Springfield in 1944 by my parents, Louis Bassett Sr. and Norma Bassett. I am now the sole shareholder and president of the company. My

husband, Paul Zable, also works for Bassett on a full-time basis. Paul and I reside in Springfield, Massachusetts.

3. Bassett is a dealer of new and used pleasure boats. Bassett's corporate office and principal showroom and service center is located at 121 West Street, Springfield, Massachusetts. Bassett also maintains a service location in Ludlow, Massachusetts; and showrooms in Quincy, Massachusetts; Westbrook and Cos Cob, Connecticut; and Warwick, Rhode Island.

4. As President of Bassett, I am responsible for virtually all the company's operations and affairs, including sales, finance, administration, and customer and supplier relationships. I am based in the company's corporate office in Springfield and spend the vast majority of my time working out of Springfield.

5. In April 2007, a severe storm struck Bassett's facility in Warwick, Rhode Island. The storm caused damage to approximately 11 new boats and 4 used boats. Among the boats damaged were a Viking 57' flybridge, which was sunk during the storm, and two Sea Ray motor yachts, which at the time of the storm had been sold but not yet delivered to their respective purchasers. Both of the Sea Rays suffered substantial damage as a result of the storm, and their contract purchasers refused to close on the transactions as a result. Most of the boats damaged by the storm have now been repaired, but the Viking was declared a constructive total loss and released to New Hampshire Insurance Company or its nominee.

6. At the time of the April 2007 storm, Bassett was insured pursuant to a Yacht Dealer/Marina Operations Insurance Policy (hereinafter the "Policy") issued by

New Hampshire Insurance Company (hereinafter "NHIC"). A true and correct copy of the Policy is attached hereto as Exhibit A. Bassett procured the Policy through its insurance agency, Hilb, Rogal & Hobbs ("HRH") of Boston, Massachusetts. The persons who were primarily involved in the discussions and negotiations relating to the purchase of the Policy were Paul Zable, Sheldon Collins and me, all of whom work out of Bassett's Springfield corporate office. All discussions and negotiations between Bassett and HRH concerning Bassett's purchase of the Policy occurred at Bassett's Springfield corporate office, or by telephone between Bassett representatives in Springfield and HRH agents in Boston. To my knowledge, none of the discussions or negotiations relating to Bassett's purchase of the Policy occurred in Rhode Island.

7. Bassett notified HRH and NHIC of the loss immediately after the storm. Since the time of the notification, Bassett has been attempting to obtain compensation from NHIC on account of the losses we suffered as a result of the storm.

8. Although NHIC has made some payments to Bassett on account of the loss, a number of disputes have arisen between Bassett and NHIC regarding the amount and extent of NHIC's liability under the Policy. For example, with respect to vessels damaged in the storm and which Bassett has repaired, Bassett has submitted work orders and invoices to NHIC for reimbursement, but NHIC has taken the position that it only is obligated to pay Bassett 80% of the invoice amount. Further, the Policy provides that, with respect to unsold boats (such as the Viking), NHIC shall compensate Bassett for not more than "the actual cash value taking into account proper deduction for depreciation and in no event shall [NHIC] be liable for more than the

cost to repair or replace the same with like kind and quality." Although NHIC has not disputed that the Viking was a constructive total loss, it has failed to pay to Bassett the actual cash value of the vessel. Finally, with respect to boats that were sold but not delivered (such as the Sea Rays listed above), the Policy provides that NHIC shall compensate Bassett for not more than "the net selling price less all discounts." Although there appears to be little dispute about the nature and extent of the damage to each of the Sea Rays, NHIC has taken the position that its liability with respect to these boats is limited to the cost of repair (discounted by 20%), even though the Policy states that the amount to which Bassett is entitled to recover is tied to the net selling price of the boat, and not the cost of repairs. These are some, but not all, of the disputes that have arisen between Bassett and NHIC..

9. For some months prior to the commencement of this lawsuit by NHIC, I had seriously considered instructing my counsel to file a lawsuit in Massachusetts against NHIC to resolve the ongoing coverage dispute, which dispute – and NHIC's failure to fully and promptly compensate Bassett for its substantial losses – was causing serious financial hardship to Bassett. I decided to hold off on filing suit, however, because Bassett's attorney and NHIC's attorneys were in regular communications in an attempt to resolve the outstanding issues, and I believed that filing a lawsuit while those discussions were ongoing was both premature and might have a chilling effect on the settlement discussions.

10. With the exception of NHIC's outside counsel, Vetter & White of Providence, virtually none of the representatives or agents of NHIC with whom Bassett

or its agents have dealt in connection with this claim were located in Rhode Island. The person primarily responsible for adjusting this claim on behalf of NHIC was Susan Smith, who sent correspondence to Bassett on letterhead of AI Marine Adjusters, Inc., with an address of 175 Water Street, 14th Floor, New York, NY. A copy of a letter that Bassett received from Ms. Smith is attached hereto as Exhibit B. Upon information and belief, both NHIC and AI Marine Adjusters, Inc., are affiliated with American International Group ("AIG"). Bassett also dealt with NHIC's marine adjuster, William Robbins, who, upon information and belief, works out his office in Haddam, Connecticut.

11. Among the Bassett officers and employees with first-hand knowledge of the facts and matters germane to this lawsuit, and therefore would be expected to testify in any trial of this matter, are Paul Zable; Sheldon Collins, who is Bassett's controller, and me. I have extensive knowledge of all aspects of Bassett's business, including the losses Bassett suffered as a result of the storm, the circumstances surrounding Bassett's obtaining the policy of insurance, communications I had with customers who had contracts to purchase boats that were damaged during the storm, the value of the damaged boats (both before and after they were damaged), and the nature and extent of Bassett's damages. Paul Zable has personal knowledge of the damage to the various boats, the repairs required to fix those boats, and the cost to Bassett to repair those boats. Sheldon Collins has personal knowledge of the financial matters relating to Bassett's claim, including its damages. All of these people reside in Springfield, Massachusetts, and work out of Bassett's Springfield corporate office. I

do not expect that Bassett will need to call any of its Rhode Island employees to testify, but if it does, or if NHIC determine that it wishes to call any of Bassett's Rhode Island employees to testify, Bassett will make those employees available for deposition and/or trial testimony in Springfield.

12. As the owners of a relatively small, family-run business, the requirement that Paul Zable and I travel to and from Providence for depositions and/or court hearings would be extremely disruptive and costly to Bassett. Because we actively operate and manage all aspects of the business, our presence at the corporate office whenever possible is critical, and our inability to be in Springfield disrupts the smooth operation of the business and of customer relations. Further, as our controller, Sheldon Collins has important responsibilities involving the financial affairs of the company that would be seriously disrupted by the requirement that he travel to and from Providence for depositions, hearings and/or trial.

13. Bassett was served with a copy of this lawsuit at its Rhode Island location on or about January 17, 2008. Prior to that date, Bassett was not aware that NHIC had filed its Complaint in this court in September 2007. In fact, between September 2007 and January 2008, Bassett received payments from NHIC on account of the claim. Bassett also received a substantial payment from NHIC on account of the repairs to one of the Sea Rays mentioned above after the lawsuit was served.

14. Aside from the substantial financial losses that Bassett suffered as a result of the storm and for which NHIC has failed to adequately compensate it, Bassett has incurred significant cost in attempting to get NHIC to comply with its obligations

under the Policy. In addition to substantial legal fees, Bassett has lost countless man hours of time dealing with this claim and preparing the seemingly endless documentation that NHIC has required. The requirement that Bassett now litigate this claim in Providence, where none of the parties or witnesses is located, will add further substantial cost that Bassett must incur merely to protect and enforce its rights, but which cost could be significantly reduced if this case were litigated in Springfield, Massachusetts. As a result, Bassett is respectfully requesting that this case be transferred.

Dated at Springfield, Massachusetts, this 1 day of May 2008.

Diane Bassett Zable, Pres.

Diane Bassett Zable

Subscribed and sworn to before me on this 1st day of May 2008.

Notary Public Roger Seth, expires 11/22/13