IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NEW HAMPSHIRE INSURANCE COMPANY :
Plaintiff, :
v. : C.A. No. 07-356/S
BASSETT BOAT COMPANY, INC. :
Defendant. :

**NEW HAMPSHIRE INSURANCE COMPANY'S OBJECTION TO BASSETT BOAT COMPANY, INC.'S MOTION TO TRANSFER VENUE**

Plaintiff/counterclaim defendant, New Hampshire Insurance Company ("NHIC"), hereby objects to defendant/counterclaimant Bassett Boat Company, Inc.'s motion to transfer venue. NHIC submits herewith a supporting memorandum of law.

NHIC requests oral argument in connection with this objection and estimates that such argument may last less than 30 minutes.

Respectfully submitted by Plaintiff/Counterclaim Defendant, New Hampshire Insurance Company, by its Attorneys,

/s/ Michael J. Daly
Brooks R. Magratten, Esq., #3585
Michael J. Daly, Esq., #6729
VETTER & WHITE
Attorneys for Plaintiff/Counterclaim Defendant,
New Hampshire Insurance Company
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
mdaly@vetterandwhite.com

Andrew C. Coulam, Esq., R.I. Bar No. 6884
Robert Elmer, Esq., R.I. Bar No. 6556
TAYLOR DUANE BARTON & GILMAN LLP
10 Dorrance Street, Suite 700

Providence, RI 02903
(401) 273-7171
(401) 273-2904
acoulam@taylorduane.com

Dated: May 20, 2008

CERTIFICATE OF SERVICE

To:

Richard M. Levy, Esq.
Kroll, McNamara, Evans & Delehanty, LLP
29 South Main Street
West Hartford, CT 06107

Gardner H. Palmer Jr., Esq.
Law Office of Joseph M. DiOrio, Inc.
10 Dorrance Street, Suite 1200
Providence, RI 02903

I hereby certify that I electronically filed this OBJECTION on May 20, 2008. This document is available for viewing and downloading from the Court's Electronic Case Filing System. Service has been effectuated by electronic means.

/s/ Michael J. Daly

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY<br>Plaintiff,<br><br>v.<br><br>BASSETT BOAT COMPANY, INC.<br>Defendant. | C.A. No. 07-356/S |

**NEW HAMPSHIRE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO BASSETT BOAT COMPANY, INC.'S MOTION TO TRANSFER VENUE**

This case arises out of defendant/counterclaimant Bassett Boat Company, Inc.'s ("Basett") claim for insurance benefits pursuant to a Yacht Dealer's Insurance Policy ("Policy") issued by plaintiff/counterclaim defendant, New Hampshire Insurance Company ("NHIC"). Bassett made the claim after a storm struck its facility in Warwick, Rhode Island, damaging several boats on its premises. Although the loss occurred in Rhode Island, at Bassett's Rhode Island facility and involves Bassett's Rhode Island employees and inventory, Bassett has moved to transfer this matter to Springfield, Massachusetts because three of its witnesses, despite being listed on Bassett's "Rhode Island directory," live and work primarily in Springfield. For the reasons set forth below, NHIC objects to Bassett's motion to transfer.

## I. BACKGROUND

Bassett is a multi-state boat dealership and repair center with facilities located in Rhode Island, Massachusetts and Connecticut. Bassett purchased the Policy from NHIC to obtain coverage for "direct physical 'loss' or damage" to Bassett's inventory, including new and used boats. See Policy at § 4, attached as Exhibit A.

On or about April 16, 2007, Bassett submitted a claim under the Policy after a storm struck its Warwick, Rhode Island facility and damaged or destroyed multiple boats. Within days, NHIC retained a surveyor, William Robbins, to go to the Warwick facility to assess the damage. Mr. Robbins worked with Bassett's Service Manager for its Warwick facility, Mike Wonjar, to identify the scope of the necessary repairs. Mr. Robbins inspected the vessels and confirmed that all but one of the boats were damaged but repairable. One of the boats – a 57-foot Viking yacht ("Viking") - was so damaged that NHIC declared it a constructive total loss ("CTL"). See Declaration of William Robbins at ¶¶ 3 & 4 (hereafter "Robbins Dec."), attached as Exhibit B.

In connection with Bassett's claim, NHIC attempted to obtain information from Bassett to calculate benefits due under the Policy for the "direct physical 'loss' or damage to the" vessels. Policy at § 4. With respect to the Viking, Bassett contends that Policy limitations establish the minimum that Bassett can recover, rather than the maximum amount recoverable. Specifically, Bassett cites to language in the Policy providing that NHIC "shall **not be liable for more than** the actual cash value [of the Viking] taking into account the proper deduction for depreciation and in **no event shall [NHIC] be liable for more than** the cost to repair or replace the same with like kind and quality." Policy § 7 (A). According to Bassett, despite the limiting nature of this language, it is entitled to recover **at least** the "actual cash value" of the Viking or the amount to replace it with "like kind and quality."

NHIC disagrees with Bassett's interpretation of the Policy and, like the New Hampshire Supreme Court, interprets the "actual cash value" and repair/replacement language to be limiting provisions, "not a substantive measure of damages which the insured may invoke." Pinet v. New Hampshire Fire Insurance Co., 126 A.2d 262, 264-65 (N.H. 1956) (interpreting similarly worded

policy limitations). As Bassett explained to NHIC, Bassett's "direct physical 'loss'" could not exceed the amount that it actually paid to purchase the vessel. Policy § 4.

Further, even accepting Bassett's creative interpretation of the limitation provisions, NHIC disagrees with Bassett's application of those provisions. Despite having purchased the Viking for $1,457,800, Bassett claims that the "actual cash value" or the cost to repair or replace the Viking was at least $1,800,550.00 and demands that NHIC pay that amount. NHIC disputes that figure. Although the parties have been unable to agree on the amount payable for the Viking loss, NHIC paid Bassett its full purchase price of $1,457,800 for the vessel, without taking into account any depreciation during the year that it sat unsold at Bassett's facility.[1]

As for the other boats, the extent of damage varied. Bassett made all repairs to the vessels in Warwick. It nevertheless alleges that the repairs have not fully restored all of the vessels to their pre-loss condition. See ANSWER OF BASSETT BOAT CO., INC. at ¶ 25. Moreover, the correct reimbursement amount for certain vessel repairs is in dispute. Although § 9(B) of the Policy provides that reimbursement for "repairs and replacements for which [NHIC] shall be liable … shall be made at [Bassett's] cost prices for time, labor and material," Bassett did not identify its actual cost to make the repairs in Rhode Island. Rather, Bassett submitted work orders reflecting the retail prices it would have charged the general public. Bassett argues that Rhode Island law (without any support for its position) entitled it to recover its retail repair bills (which include a profit to the company) despite the language of the Policy confirming that Bassett can only recover its costs. See Robbins Dec. at ¶ 5. Notwithstanding Bassett's failure to

---

[1] It should be noted that Bassett's president, Paula Bassett-Zable, has represented that many of Bassett's customers covet the newest model boats available and that delays in sales increase depreciation.

disclose its actual costs, NHIC paid Bassett for every repair by estimating[2] Bassett's actual cost and tendering that amount.

Repairs to one of the damaged vessels deserve separate attention because the extent of the damage remains in dispute. Bassett initially claimed that a forty-foot Sea Ray ("Sea Ray 40") was so extensively damaged that it too should be deemed a CTL. NHIC's adjustor, Mr. Robbins, however, twice inspected that vessel and concluded that it could be repaired. Because of the differences in opinion between Bassett and Mr. Robbins, Mr. Robbins coordinated with Mr. Wonjar to conduct a joint inspection of the vessel. The joint inspection took place at Bassett's premises in Rhode Island and, shortly thereafter, Mr. Wonjar submitted a work order confirming that the vessel was in fact repairable and estimating that the repairs could be made for approximately $115,000. Robbins Dec. at ¶ 6. NHIC believes that Bassett ultimately completed the repairs in Rhode Island. In this lawsuit, however, Bassett now suggests that the Sea Ray 40 should be declared a CTL based on the severity of the damage. See COUNTERCLAIM at ¶ 10.

The parties have been attempting to resolve the above described, and other, disputes for nearly one year. During this time, NHIC's primary points of contact have been its Rhode Island counsel, Brooks Magratten, Esq., and Michael Daly, Esq. Susan Smith, a Hull Manager for the Marine Claims Department of American International Group, Inc., has exchanged limited correspondence with Bassett on behalf of NHIC, from her office in New York, New York. Bassett's Hartford, Connecticut counsel, Richard Levy, Esq., has been the primary point of contact for Bassett.

NHIC filed this declaratory judgment action in Rhode Island in September 2007, but continued in good faith to work with Bassett to resolve the dispute before serving the complaint

---

[2] Mr. Robbins estimated that it would be reasonable to expect that a repair facility would earn at least a 20% profit on its retail repair shop invoices. Accordingly, NHIC paid Bassett 80% of the retail invoice amount that Bassett provided. See Robbins Dec. at ¶ 5.

in January 2008. After the complaint was served, Bassett counterclaimed to recover additional benefits under the Policy (Count I). Additionally, Bassett has sued NHIC for bad faith and breach of Massachusetts consumer protection laws (Counts II and III) (hereafter, together referred to as "bad faith counts"). And, despite that:

- Bassett has a permanent and long-standing physical presence in Rhode Island;
- the loss occurred in Rhode Island;
- the disputed repairs were made in Rhode Island by Rhode Island employees;
- multiple fact witnesses are in Rhode Island;
- extensive negotiations have taken place from Rhode Island; and
- Massachusetts has no connection to the disputed[3] operative facts in this case,

Bassett has moved to transfer this action to Springfield, Massachusetts.

Bassett's motion should be denied because: 1) NHIC's decision to initiate litigation in Rhode Island should be given "great weight;" and 2) Bassett cannot satisfy its heavy burden of demonstrating that convenience and justice require that the case be transferred to Massachusetts.

## II. DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer pursuant to § 1404(a) "was designed and reserved for those instances where the transfer was sought to a District Court substantially distant from the district where the action had been instituted; otherwise it is difficult to imagine that there could be real inconvenience to the parties or witnesses." Jenkins v. Wilson Freight Forwarding Co., 104 F. Supp. 422, 425 (S.D.N.Y. 1952).

[3] There is no dispute that the Policy was delivered to Bassett's Massachusetts office.

"It is well established that in considering a motion to transfer under [] §1404(a), the plaintiff's choice of forum is entitled to great weight. In order to overturn the plaintiff's choice of forum, the party seeking a transfer bears a heavy burden of showing a strong balance of inconvenience." Blinzler v. Marriott Intern., Inc., 857 F. Supp. 1, 3 (D. R.I. 1994); Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 38-39 (D. R.I. 2003). "Inconvenience to the defendant is not sufficient to grant § 1404(a) relief, where the transfer would merely shift the inconvenience to the other party." Id. at 39. Transfer is appropriate only if the alternative forum is more convenient, not if it is equally or less convenient. Id. Indeed, "transfer should be denied where the factors to be considered are evenly balanced or only slightly favor a transfer…." Scovill Mfg. Co. v. Sunbeam Corp., 357 F. Supp. 943, 946 (D.C. Del. 1973)

In determining whether transfer is "in the interest of justice," the inquiry focuses on private and public interests. Private interests include:

(1) "relative ease of access to sources of proof;"

(2) "availability of compulsory process for attendance of unwilling" witnesses;

(3) "the cost of obtaining attendance of willing []witnesses;"

(4) the "possibility of view of premises, if view would be appropriate to the action;" and

(5) "all other practical problems that make trial of a case easy, expeditious and inexpensive."

Paradis v. Dooley, 774 F. Supp. 79, 82 (D. R.I. 1991) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

The public interests include:

(1) "the administrative difficulties flowing from court congestion;"

(2) "the 'local interest in having localized controversies decided at home;'"

(3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;"

(4) "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law;" and

(5) "the unfairness of burdening citizens in an unrelated forum with jury duty."

Id. (quoting Gulf Oil Corp., 330 U.S. at 509).

## A. NHIC'S ELECTION TO FILE SUIT IN RHODE ISLAND IS ENTITLED TO GREAT WEIGHT

Despite recognizing that a plaintiff's selection of forum is generally entitled to "great weight," Bassett argues that NHIC's election to file suit in Rhode Island is entitled to no deference for three reasons: 1) Rhode Island is not NHIC's "home state;" 2) there is no nexus between the contract dispute and any evidence or events occurring in Rhode Island; and 3) NHIC supposedly engaged in a "race to the courthouse." See MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER VENUE OF DEFENDANT BASSETT BOAT COMPANY, INC., (hereafter "Bassett Mem.") at pp. 6, 14-16. None of these arguments has merit.

With respect to Bassett's "home state" and "nexus" arguments, it has been held that a defendant's burden to demonstrate the appropriateness of transfer "is lightened when a plaintiff has not brought suit on his 'home turf' or at the site of the activities at issue in the law suit." McEvily v. Sunbeam-Oster Co., Inc., 878 F. Supp. 337, 344 (D. R.I. 1994). Here, however, Rhode Island is the "site of the activities at issue in the lawsuit." Id.

- The loss occurred at Bassett's Rhode Island facility;
- Bassett seeks additional reimbursement for repairs that were made in Rhode Island; and
- The parties dispute the extent of damage to the Sea Ray 40 - a vessel damaged, repaired and presently located at Bassett's Rhode Island facility.

Conversely, it is undisputable that Massachusetts has absolutely no connection to the salient facts of this case.

Further, Bassett's "race to the courthouse" argument is predicated on an exception to the "first-filed rule," which has no bearing in this case. "The 'first-filed rule' is an equitable doctrine of venue selection followed universally: '[w]here identical actions are proceeding concurrently in two federal courts ... the first filed action is generally preferred in a choice-of-venue decision.'" Feinstein v. Brown, 304 F. Supp. 2d 279, 281 (D. R.I. 2004) (quoting Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir.1987)). This strong presumption may be overcome in "special circumstances," such as "[w]hen the first-filed action is the result of a preemptive 'race to the courthouse....'" Id. at 283.

By definition, the first-filed rule and the exceptions thereto do not apply here because there is no action pending in another court. Therefore, the preference for litigating in Rhode Island arises by virtue of the fact that NHIC is the **only** plaintiff, not merely the **first** plaintiff. Blinzler, 857 F. Supp. at 3.

Even if this case were analyzed under the "first filed" rubric, there would be no basis for negating the "strong presumption" in favor of litigating in the forum where the first (and, in this case, the **only**) complaint was filed. There is nothing to suggest that NHIC's filing of the lawsuit was motivated by an improper preemptive race to the courthouse. Feinstein, 304 F. Supp. 2d at 282. The parties had been attempting – unsuccessfully - to resolve Bassett's claim for months before the complaint was filed. See, e.g., AFFIDAVIT OF RICHARD M. LEVY, ESQ., IN SUPPORT OF DEFENDANT BASSETT BOAT COMPANY, INC.'S MOTION TO TRANSFER VENUE at ¶ 4-5. Plainly, NHIC did not "sprint[] to the courthouse" to deprive Bassett of the opportunity to litigate in a forum of its choosing. Id. Although NHIC attempted to continue to amicably resolve the dispute

before serving the complaint, NHIC did not mislead Bassett "into foregoing litigation in order to negotiate a settlement." Id. Accordingly, NHIC's election to file suit was not improper and there are no "special circumstances" that would justify disregarding its logical selection of venue.

Finally, even if the **heavy** presumption of litigating in Rhode Island were overcome, the presumption does not disappear entirely. Bassett would still bear the burden of demonstrating that convenience and justice warrant transfer to Massachusetts. See McEvily, 878 F. Supp. at 344 (recognizing that, although the burden of persuasion may be "somewhat lightened," the movant must still demonstrate propriety of transfer). Bassett cannot satisfy this burden.

**B. CONVENIENCE DOES NOT WEIGH IN FAVOR OF TRANSFER**

'"The convenience of witnesses is said to be a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a). This factor involves not merely a consideration of the number of witnesses located in or near the respective forums, but the nature and quality of their testimony in relationship to the issues of the case."' McEvily v. Sunbeam-Oster Co., Inc., 878 F. Supp. 337, 344-45 (D. R.I. 1994) (quoting Houk v. Kimberly-Clark Corp., 613 F. Supp. 923, 928 (W.D. Mo.1985)).

At the outset, Bassett seeks to transfer this case to a courthouse that is only 85 miles away. Based on the relatively close proximity between Providence and Springfield, § 1404(a) seems inapplicable because the statute is "reserved for those instances where the transfer was sought to a District Court **substantially distant** from the district where the action had been instituted." Jenkins, 104 F. Supp. at 425 (emphasis added). Regardless, the short distance between Springfield and Providence suggests that Bassett cannot satisfy its heavy burden of demonstrating that transfer is necessary for convenience. See id. (declining to transfer, in part,

because the alternative forum was not distant); Brian Jackson & Co., (noting in a § 1404 analysis that "the distance between Pennsylvania and Rhode Island is not great"); Daily Exp., Inc. v. Northern Neck Transfer Corp., 483 F. Supp. 916, 918 (D.C. Pa. 1979) (declining to transfer, in part, because distance between possible forums was "not more than a few hours apart" and, therefore, no significant inconvenience to witnesses); Berk v. Willys-Overland Motors, 107 F. Supp. 643, 644 (D.C. Del. 1952) (declining to transfer because, in part, "the distance between the two jurisdictions … barely exceeds 100 miles.").

Should the Court consider transferring this case despite the proximity of Bassett's proposed forum (Springfield), convenience still militates in favor of retention of venue in Rhode Island because Rhode Island is a more convenient venue for the witnesses with material information pertaining to this litigation. With respect to the coverage dispute, the terms of the insurance policy speak for themselves; Bassett does not contend that the policy was modified orally. Therefore, no witnesses will have any testimony bearing on the issue of contract interpretation.

The core factual disputes pertain to: a) the extent of damage to the Sea Ray 40; b) the cost to Bassett for making the repairs in Rhode Island; and c) if Bassett's contract interpretation were accepted, the actual cash value or cost to repair or replace the Viking in Rhode Island.[4]

With respect to the damage to the Sea Ray 40, NHIC will need to present witnesses to describe the damage, the cost of repairs and the pre-loss value of the vessel. DiMillo v. Sheepscot Pilots, 870 F.2d 746, 751 (1st Cir. 1989) ("In the case of a vessel - as in the case of virtually any chattel - a constructive total loss occurs when the cost of repairing the ship is

[4] Despite Bassett's claim that "there appears to be little dispute about the nature and extent of the damage to each boat," Bassett Mem. at 8, NHIC respectfully disagrees. The parties clearly disagree about the extent of damage to one of the larger boats damaged in the storm – the Sea Ray 40.

greater than its fair market value immediately before the casualty."). To this end, NHIC intends to call Mr. Wonjar and Mr. Robbins to testify. Upon information and belief, Mr. Wonjar works primarily, if not exclusively, in Bassett's Rhode Island office. See Robbins Dec. at ¶ 8. Moreover, Mr. Robbins frequently travels to Rhode Island in connection with his business, but rarely travels to Springfield. Id. at ¶¶ 9-11. To travel to Springfield in connection with this case would likely require Mr. Robbins to miss an entire day of work and impose additional financial burdens associated with travel time and costs.

Moreover, to the extent that the market value of any damaged vessels becomes an issue at trial, the Rhode Island market again controls. Thus, it is likely that Rhode Island experts would be called as trial witnesses.

Bassett also takes issue with the reimbursement rate for repairs to every other damaged vessel. Because of Bassett's refusal to disclose its actual costs, NHIC has relied on Mr. Robbins to identify Bassett's likely costs. Id. at ¶ 5. Thus, Mr. Robbins, would be expected to testify about the amount and cost of the time, effort and materials that went into making the repairs. Additionally, because all of the repairs were made in Rhode Island, NHIC may call various Rhode Island employees of Bassett to testify about the effort put into the repairs. And ultimately, to the extent that repair costs are disputed, costs should be based on the Rhode Island market. Because no discovery has been completed, however, NHIC presently is unable to identify witnesses in addition to Mr. Robbins and possibly Mr. Wonjar.

In connection with Bassett's bad faith claims, it is expected that NHIC's Rhode Island attorneys, Brooks Magratten and Michael Daly, will be called as witnesses. Because attorneys Magratten and Daly have served as the primary points of contact for NHIC in connection with this dispute, their testimony about the substance of the communications between Bassett's

representatives and NHIC may be essential. Attorneys Magratten and Daly live and work in Rhode Island and, as compared to Rhode Island, it would be less convenient for them to travel to Springfield to testify.

It also is expected that Susan Smith would be called as a witness/NHIC representative in connection with Bassett's bad faith counts. Ms. Smith lives and works in New York. There is nothing to suggest that it would be any more convenient, expedient, or inexpensive for a person to travel from New York to Springfield than from New York to Providence. Regardless, Bassett cannot support its motion to transfer by pointing to any supposed inconvenience of a representative of NHIC, who intentionally filed suit in Rhode Island.

Bassett contends that litigating this case in Rhode Island would be inconvenient because three of its "officers and employees who are likely to testify": Diane Bassett-Zable, Paul Zable and Sheldon Collins, "live in Springfield and work out of Bassett's Springfield corporate headquarters." Bassett Mem. at 7-8. Bassett makes this argument despite the fact that its own corporate website identifies all three of these individuals on its "Rhode Island directory." See Exhibit C. Thus, it seems disingenuous for Bassett to argue that litigation in Providence - merely 14 miles from Bassett's Rhode Island facility - will be measurably more "disruptive and costly" than litigating in Springfield.

Further, the expected testimony of these three witnesses is of limited relevance and, therefore, should not factor heavily into the analysis. McEvily, 878 F. Supp. at 45. Bassett suggests that Ms. Bassett-Zable could be called to testify about Bassett's affairs generally, her procurement of the Policy and her familiarity with the coverage dispute. Such subjects are, at best, mere background information. With respect to the coverage dispute, the written policy controls; Bassett does not contend that the terms were somehow altered orally when Ms. Bassett-

Zable purchased the policy. As for Ms. Bassett-Zable's familiarity with Bassett's general affairs and the coverage dispute, such testimony would likely be undisputed and provide little more than context.

Likewise, the expected testimony of Mr. Zable is largely irrelevant. As with Ms. Bassett-Zable, Mr. Zable's testimony "about the Policy" is irrelevant. To the extent that Mr. Bassett would testify about damage to the vessels and the cost of repairs, such first-hand information could only be gathered from Mr. Bassett's routine travels to Rhode Island. Thus, it is clear that it would not be unreasonably (if at all) burdensome for Mr. Bassett to travel to Rhode Island in the unlikely event that his appearance would be necessary.

Finally, Mr. Collins' proposed testimony about "financial matters, sales that were pending at the time of the loss, and the like" is clearly irrelevant. As in any coverage dispute, either a claim is covered or it is not. The insured's other financial matters are of no moment and pending sales (which likely will not be in dispute) would most appropriately be established by documentary evidence or the agents who actually consummated the sales.

It will be more convenient for the material witnesses to participate in this action in Rhode Island. Because the Massachusetts witnesses identified by Bassett have limited, if any, pertinent information, and because of Bassett's own day-to-day business affairs in Rhode Island, it is apparent that Bassett cannot carry its heavy burden of demonstrating that transfer is warranted in the interest of convenience.

### C. TRANSFER IS NOT APPROPRIATE "IN THE INTEREST OF JUSTICE"

In determining whether the transfer should be ordered "in the interest of justice," the Court considers whether the party requesting transfer can demonstrate that the proposed

alternative forum is better for the litigants and the public at large. Bassett cannot carry that heavy burden here.

**1. PRIVATE FACTORS**

None of the private factors weight in favor of transferring this case to Springfield. Maintenance of this lawsuit in Rhode Island will make access to evidence easier. Because there apparently are disputes over the extent of damage to the Sea Ray 40 and the adequacy of repairs to other vessels, it is likely that NHIC will request a view of multiple vessels so the jury can determine for itself how significant the damages are/were and whether the repairs fully restored the vessels to their pre-loss condition. Such a view would be impractical if trial were held in Springfield.

As for documentary evidence concerning the repairs, such documents already are in the possession of Bassett regardless of the location of trial and, therefore, transfer will not alleviate any associated burdens on Bassett. Moreover, because the repairs were made in Rhode Island, related documents presumably originated in Rhode Island. If, as Bassett contends, the records "are maintained at Bassett's headquarters in Springfield," Bassett Mem. at 10, surely it is because Bassett transferred them there from Rhode Island. Finally, based on Bassett's statement that its "files are not voluminous and are largely portable," id., the documents could easily be mailed, and indeed would customarily be mailed, to NHIC regardless of venue. Thus, transfer out of Rhode Island could only impede – not facilitate – the parties' access to sources of proof.

Transfer also would curtail NHIC's ability to obtain "compulsory process for attendance of unwilling" witnesses. Paradis, 744 F. Supp. at 82. As mentioned above, it is likely that NHIC will call Bassett's Rhode Island employees as witnesses. Although Bassett states that it is not aware of any "unwilling witnesses," that may change by the time of trial. Even if Bassett were

willing to produce its employees for trial or depositions in Springfield, there can be no assurance that such individuals will still be employed by Bassett or otherwise under their control at the time their testimony would be requested. If key witnesses left Bassett's employ by the time of trial, then NHIC would have to rely on compulsory process to secure their attendance. Accordingly, Bassett's assurances are a woefully inadequate replacement for the availability of compulsory process that could only be had in Rhode Island.

For these reasons, Bassett cannot satisfy its burden of demonstrating that the private factors counsel in favor of transferring this case to Springfield.

**2. PUBLIC FACTORS**

The public factors do not weigh in favor of transferring this case to Springfield. With respect to Bassett's concerns over a choice of law analysis, this Court is fully capable of determining whether Massachusetts, New York or Rhode Island law controls and applying it accordingly. See Brian Jackson & Co., 248 F. Supp. 2d at 39 (noting that this Court is as competent as a Pennsylvania court at applying Pennsylvania law). Regardless, "[t]he necessity to apply foreign law is given little weight in reviewing the merits of a Motion to Transfer." Daily Exp., Inc., 483 F. Supp. at 918.

Finally, this case is a "localized controvers[y]." Paradis, 744 F. Supp. at 82. Bassett owns and operates a business in Rhode Island and employs multiple Rhode Islanders. The loss occurred in Rhode Island. The repairs were performed in Rhode Island, presumably by Rhode Island employees. Rhode Island citizens have an interest in ensuring that companies, such as Bassett, that have a substantial presence in Rhode Island and who hire Rhode Island workers do not receive improper insurance payments. Accordingly, litigation of this lawsuit in Rhode Island would not impose an unfair burden on the citizens of this state.

## **CONCLUSION**

For the reasons stated herein, NHIC respectfully requests that its decision to litigate this Rhode Island based dispute in Rhode Island be honored and that Bassett's motion to transfer this matter to Springfield, Massachusetts be denied.

Respectfully submitted by Plaintiff/Counterclaim Defendant, New Hampshire Insurance Company, by its Attorneys,

/s/ Michael J. Daly
Brooks R. Magratten, Esq., #3585
Michael J. Daly, Esq., #6729
VETTER & WHITE
Attorneys for Plaintiff/Counterclaim Defendant,
New Hampshire Insurance Company
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
mdaly@vetterandwhite.com

Andrew C. Coulam, Esq.
R.I. Bar No. 6884
TAYLOR DUANE BARTON & GILMAN LLP
10 Dorrance Street, Suite 700
Providence, RI 02903
(401) 273-7171
(401) 273-2904
acoulam@taylorduane.com

Dated: May 20, 2008

CERTIFICATE OF SERVICE

To:

Richard M. Levy, Esq.
Kroll, McNamara, Evans & Delehanty, LLP
29 South Main Street
West Hartford, CT 06107

Gardner H. Palmer Jr., Esq.
Law Office of Joseph M. DiOrio, Inc.
10 Dorrance Street, Suite 1200
Providence, RI 02903

I hereby certify that I electronically filed this MEMORANDUM on May 20, 2008. This document is available for viewing and downloading from the Court's Electronic Case Filing System. Service has been effectuated by electronic means.

/s/ Michael J. Daly