IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY<br>Plaintiff,<br><br>v.<br><br>BASSETT BOAT COMPANY, INC.<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 07-356/S |

**DECLARATION OF WILLIAM ROBBINS**

1) I, William Robbins, am over the age of 18 years and am a resident of Haddam, Connecticut. I have personal knowledge of the matters stated in this Declaration and, if called as a witness, could and would competently testify thereto.

2) I am employed as a Marine Surveyor for New England Marine Survey, LLC ("NEMS"), which is a business I own and operate from Haddam, Connecticut.

3) New Hampshire Insurance Company ("NHIC") retained NEMS to adjust a loss reported by Bassett Boat Company, Inc. ("Bassett") after a storm struck its facility located at One Masthead Drive, Warwick, Rhode Island ("facility"). In connection with that assignment, and within days of Bassett's reported loss, I went to Bassett's facility to inspect the damaged boats. I have since returned to Bassett's facility on multiple occasions to inspect, or re-inspect the damaged vessels and to monitor the status of repairs.

4) During my multiple inspections of the vessels and review of Bassett's claim, Bassett's Service Manager for its Warwick facility, Mike Wonjar, was my point of contact for Bassett. On several occasions, Mr. Wonjar and I met at Bassett's Warwick facility to discuss the scope of the damage and necessary repairs to each of

WBR 5/20/08

the vessels that Bassett reported as being damaged. Every communication that I had with Mr. Wonjar or any other person associated with Bassett took place in Rhode Island.

5) Bassett's insurance policy permitted Bassett to be reimbursed for its actual cost to make necessary repairs. Accordingly, I requested that Bassett disclose its cost to make such repairs. Mr. Wonjar, however, said that Bassett could only produce retail invoices for the repairs. Mr. Wonjar further indicated that Bassett was insisting on being reimbursed for repairs at its retail prices, despite the policy limitations, because Rhode Island was a so-called "full rate" state. Because Bassett did not disclose its true costs, I estimated that a repair facility such as Bassett likely earned at least a 20% profit on its retail repair billings. Accordingly, based on my review of the vessels, the damage and the work orders, I informed NHIC that Bassett's costs likely amounted to 80% of the amount listed on the retail invoices.

6) With respect to one of the vessels that Bassett reported as damaged – a 40 foot Sea Ray ("Sea Ray 40'") - I inspected the vessel twice in Rhode Island and determined that the damages were repairable. Because Bassett insisted that the extent of the damage rendered the vessel a constructive total loss, I arranged with Mr. Wonjar to conduct an extensive, joint inspection of the vessel to determine the extent of damage. The joint inspection took place at Bassett's Rhode Island facility on November 27, 2007, after which Mr. Wonjar and I agreed that the Sea Ray 40' was repairable. Mr. Wonjar provided me with an estimate that the retail pricing for the necessary repairs would be $115,050.37.

WBR 5/20/08

7) To my knowledge, all repairs to the damaged vessels have been made by Bassett at its Warwick facility.

8) Upon information and belief, Mr. Wonjar is a Rhode Island citizen, residing near Bassett's Warwick facility.

9) It would be more convenient for me to participate in any lawsuit in Rhode Island than in Springfield, Massachusetts. A significant part of my business activities occur in Rhode Island. I typically travel to Rhode Island at least once per week.

10) On May 14 and 15, 2008, I testified as an expert witness in the United States District Court for the District of Rhode Island in a case captioned, Northern Insurance Company of New York v. Albin Manufacturing, Inc., C.A. No. 06-190. It was convenient for me to participate in that lawsuit, in part, because I travel so frequently to Rhode Island.

11) I conduct almost no business in Springfield, Massachusetts. Although my home in Haddam, CT, may be slightly closer to Springfield than Providence, I do not routinely travel to Springfield. I have traveled to the Springfield area only once within the past year. As compared to Rhode Island, it would be less convenient for me to travel to Springfield to provide deposition or trial testimony.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 20, 2008

[signature]