UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY, Plaintiff, | : | |
| v. | : | CA 07-356 S |
| BASSETT BOAT COMPANY, INC., Defendant. | : | |

**MEMORANDUM AND ORDER**
**DENYING MOTIONS TO TRANSFER AND TO SEVER**

Before the Court are two motions:

1) Motion of Defendant Bassett Boat Company, Inc. to Transfer Venue (Doc. #21) ("Motion to Transfer"); and

2) Counterclaim Defendant New Hampshire Insurance Company's Motion to Sever Claims and to Stay Discovery of the Severed Claims (Doc. #25) ("Motion to Sever") (collectively, the "Motions").

A hearing was conducted on July 8, 2008. For the reasons stated herein, the Motions are denied.

**Facts**

Bassett Boat Company, Inc. ("Bassett"), is a Massachusetts corporation whose primary business is selling new and used boats. Its corporate office and principal showroom and service center are located in Springfield, Massachusetts. Bassett also maintains a service center in Ludlow, Massachusetts, and has additional showrooms in Quincy, Massachusetts, Westbrook and Cos Cob, Connecticut, and Warwick, Rhode Island.

In April of 2007, a severe storm struck Bassett's Warwick, Rhode Island, facility, causing varying levels of damage to approximately fifteen new and used boats. Among the boats damaged were a Viking 57' flybridge (the "Viking"), which was sunk during the storm, and two Sea Ray motor yachts (the "Sea

Rays"), which at the time of the storm had been sold but not yet delivered to their respective purchasers. Both of the Sea Rays suffered substantial damage as a result of the storm, and their contract purchasers refused to close on the transactions as a result. The remaining vessels affected by the storm suffered varying degrees of damage. Most of the boats have now been repaired.

At the time of the April 2007 storm, Bassett was insured pursuant to a Yacht Dealers/Marina Operators Insurance Policy (the "Policy") issued by Plaintiff New Hampshire Insurance Company ("NHIC"). Although NHIC made some payments to Bassett on account of the loss, several disputes arose regarding the amount and extent of NHIC's liability under the Policy.

According to Bassett, the issues in controversy between the parties do not involve the extent to which any of the vessels were damaged, but rather the proper interpretation of the Policy and, therefore, the extent and amount of NHIC's obligation to compensate Bassett for its losses. For example, Bassett states that there is no dispute that the Viking was a constructive total loss and that the issue is how much NHIC is obligated to pay Bassett as a result of that loss. NHIC has taken the position that the amount Bassett may recover under the Policy cannot exceed the original wholesale price that Bassett paid for the boat, even if the same vessel – or one of like kind and quality – can no longer be obtained for that price. With regard to the Sea Rays, NHIC has taken the position that its liability is limited to the cost of repairing those boats and that Bassett is not entitled to recover its full repair rates in connection therewith.[1]

---

[1] In its counterclaim, Bassett alleges, presumably with respect to these same two Sea Rays, that NHIC has failed to fully compensate Basset for its loss pursuant to the Policy by refusing "to pay the net

NHIC maintains that it is not required under the Policy to pay Bassett more than the price for which Bassett purchased the Viking, $1,457,800.00, and that it has already paid this sum to Bassett for the vessel. NHIC specifically disputes that it is obligated to pay Basset $1,800,550.00, the amount Bassett claims is the "actual cash value" or the cost to repair or replace the Viking. Relative to the Sea Rays, NHIC claims that Bassett refused to identify its actual cost to make the repairs on the vessels, but submitted work orders reflecting the retail prices it would have charged the general public. NHIC paid Bassett for every repair by estimating Bassett's actual cost and tendering that amount. This resulted in Bassett receiving 80% of the amounts shown on the retail invoices that it provided to NHIC.

NHIC filed this action for a declaratory judgment on September 19, 2007, but it did not serve (or otherwise notify Bassett of the commencement of the action) until January 17, 2008. Prior to and during this four month period, the parties were engaged in settlement discussions. On January 17, 2008, NHIC's counsel notified Bassett's counsel that the action had been filed and that Basset would be served that day.

On February 6, 2008, before Bassett answered the Complaint (Doc. #1), NHIC filed an Amended Complaint (Doc. #4). Bassett responded to the Amended Complaint by filing an Answer/ Counterclaim (Doc. #13) on April 4, 2008. In its Counterclaim, Bassett charged NHIC with breach of contract under the Policy (First Count), breach of the covenant of good faith and fair dealing under the Policy and two additional policies[2] (Second

---

selling price of the boat less discounts." Answer, Affirmative Defenses and Counterclaim of Defendant Basset Boat Co., Inc. (Doc. #13) ("Answer/Counterclaim") at 8 ¶¶ 10-11.

[2] The two additional policies were a commercial policy and a "Bumbershoot Policy." Answer/Counterclaim at 6 ¶ 4.

Count), and violation of Mass. Gen. Laws ch. 93A § 11 based on "an unfair and deceptive act or practice and an unfair claim settlement practice in violation of Mass. Gen. Laws ch. 176D § 3(9) ...," Answer/ Counterclaim at 11 ¶ 26.

## Discussion

### I. Motion to Transfer

Pursuant to 28 U.S.C. § 1404(a), Bassett seeks to have this action transferred to the United States District Court for the District of Massachusetts, Springfield (Western) Division. In support of this request, Bassett has submitted an affidavit from its president, Diane Bassett Zable ("Ms. Bassett Zable"). Ms. Bassett Zable attests that Bassett is a relatively small, family-run business and that it would be seriously disruptive and costly to Bassett if she, her husband, Paul Zable ("Mr. Zable"), who works full time for Bassett and allegedly has knowledge about matters pertaining to the lawsuit, and Sheldon Collins, Bassett's controller, were required to travel to and from Providence for depositions and/or court hearings.[3] See Affidavit of Diane Bassett Zable in Support of Defendant Bassett Boat Company, Inc.'s Motion to Transfer Venue ("Bassett Zable Aff.") ¶¶ 11-12. Ms. Bassett Zable further states that she, her husband, and Collins all reside in Springfield and work out of Bassett's Springfield corporate offices. Lastly, Ms. Bassett Zable attests that for some months prior to the commencement of this action she had seriously considered instructing her counsel to file suit in Massachusetts against NHIC to resolve the on-going coverage dispute. She explains her reasons for not doing so:

> I decided to hold off on filing suit, however, because

---

[3] Ms. Bassett Zable describes the degree of disruption if she and her husband were required to travel to and from Providence as "extreme[]," Bassett Zable Aff. ¶ 12, and the degree of disruption resulting from similar travel by Collins as "serious[]," id.

> Bassett's attorney and NHIC's attorneys were in regular communications in an attempt to resolve the outstanding issues, and I believed that filing a lawsuit while those discussions were ongoing was both premature and might have a chilling effect on the settlement discussions.

Id. ¶ 9.

"It is well established that in considering a motion to transfer under 28 U.S.C. § 1404(a), the plaintiff's choice of forum is entitled to great weight. In order to overturn the plaintiff's choice of forum, the party seeking a transfer bears a heavy burden of showing a strong balance of inconvenience." Blinzler v. Marriott Int'l, Inc., 857 F.Supp. 1, 3 (D.R.I. 1994); accord McEvily v. Sunbeam-Oster Co., 878 F.Supp. 337, 344 (D.R.I. 1994). Bassett acknowledges that this is the law, but contends that here NHIC's choice of forum is entitled to no weight because NHIC filed this action while settlement discussions were ongoing.

The Court indicated at the hearing that it was somewhat troubled by NHIC's action in filing this action in September 2007 but not disclosing this fact to Bassett until January. However, after reading the two cases cited by Bassett in support of this particular argument, the Court is unpersuaded that NHIC's choice of forum is entitled to no weight.

First, both cases dealt with situations in which there were two actions proceeding in different jurisdictions. See Feinstein v. Brown, 304 F.Supp.2d 279, 281 (D.R.I. 2004)("This case tests the application of the [first-filed] rule to a scenario in which one party files a state court action that is subsequently removed to federal court, and the other party sues in a different federal court after the state action was filed, but before its removal."); Ontel Prods., Inc. v. Project Strategies Corp., 899 F.Supp. 1144, 1146 (S.D.N.Y. 1995)(noting that plaintiff filed suit in the Southern District of New York and that defendant filed suit later that same day in the District of New Jersey).

Here there is only one action, and it is not the result of a preemptive "race to the courthouse," Feinstein, 304 F.Supp.2d at 283. Thus, the "first-filed rule," id. at 280, and the exceptions thereto are not directly applicable to the instant circumstances. Cf. id. at 283 ("When the first-filed action is the result of a preemptive 'race to the courthouse,' a court may allow a later-filed case to proceed in place of the first-filed action.").

Second, while the burden on a movant seeking transfer "is lightened when a plaintiff has not brought suit on his 'home turf' or at the site of the activities at issue in the law suit," McEvily, 878 F.Supp. at 344, here Rhode Island is "the site of the activities at issue in the law suit," id. The loss occurred in Rhode Island, the damaged boats were inspected in Rhode Island, those which could be repaired were repaired in Rhode Island, and the cost of making those repairs is the amount required to make those repairs in Rhode Island and not in some other jurisdiction. Thus, NHIC's choice of forum is not one which on its face would never have been considered by Bassett. Cf. Ontel Products, 899 F.Supp. at 1150 (explaining that an anticipatory filing "is improper where it attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose"). Although the Court recognizes that Bassett probably would have filed its action in the District of Massachusetts, it could also have logically done so in the District of Rhode Island.

Third, this does not appear to be a situation where NHIC induced Bassett to forbear from filing suit under the false promise of engaging in settlement discussions and then failed to engage in those discussions in good faith. The record suggests that during the four months following the filing of the action settlement discussions continued and that some additional payments were made to Bassett. See Affidavit of Richard M. Levy,

Esq., in Support of Defendant Bassett Boat Company, Inc.'s Motion to Transfer Venue ("Levy Aff."), Exhibit A (Letter from Daly to Levy of 1/17/08)(stating that "I expect to be able to forward you the checks shortly" and that "we have been able to make considerable progress over the past months and I hope to continue to do so. Please let me know if Bassett wants additional time to respond to the complaint while we try to resolve any remaining disagreements."); cf. Feinstein, 304 F.Supp.2d at 283 (finding no special circumstances to overcome presumption favoring the first-filed action where plaintiffs "neither misled [defendant] into foregoing litigation in order to negotiate a settlement and then filed suit, nor reacted to [defendant]'s notice of imminent filing by 'literally sprinting to the courthouse the same day'") (quoting The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F.Supp.2d 12, 16 (D. Mass. 2002)).

Fourth, the Court is not entirely satisfied that Ms. Bassett Zable's statement that she "seriously considered" instructing her counsel to file a lawsuit in Massachusetts but decided to hold off, Bassett Zable Aff. ¶ 9, qualifies Bassett to benefit from the proper application of the first-filed rule. As the court in Ontel Products explained:

> [T]he first-filed rule should operate so as to benefit those parties who were prepared, and had every intention, to pursue foreseeable legal action but failed to bring suit first due solely to their attempt to settle the matter without court involvement.[4] In contrast, those

---

[4] Footnote 11, which appears at this point in the Ontel Products opinion, states:

> Parties that employ the common settlement technique of providing an adversary with a drafted, but unfiled, complaint would clearly fall within this category. See, e.g., Columbia Pictures Indus., Inc. [v. Schneider], 435 F.Supp. [742] at 747 [(S.D.N.Y. 1977), aff'd, 573 F.2d 1288 (2nd Cir. 1978)].

Ontel Prods., 899 F.Supp. at 1151.

> "second filers" who refrained from suing due to any, or any combination, of the myriad of other factors that deter lawsuits, such as legal fees, court costs, process server expenses, the hope to avoid "raising the stakes" in the dispute, the desire not to appear unnecessarily litigious, and the uncertainty of the strength of one's claim, should not receive the benefit of the first-filed rule.

Ontel Prods., 899 F.Supp. at 1151. Ms. Bassett Zable's statement that she believed filing a lawsuit while the settlement discussions were ongoing was "premature and might have a chilling effect on the settlement discussions," Bassett Zable Aff. ¶ 9, is not far removed from desiring "not to appear unnecessarily litigious ...," Ontel Prods., 899 F.Supp. at 1151. Certainly, there is no evidence that Bassett ever went so far as to draft a complaint in anticipation of filing it. See id. at 1151 n.11. Indeed, the fact that Bassett did not file suit in Massachusetts after learning of this action suggests that it was not as close to initiating litigation as it now contends.

Having determined that NHIC's choice of forum is still entitled to great weight, the Court proceeds to consider whether Bassett has shown that there is a strong balance of inconvenience which favors the granting of the Motion to Transfer. Bassett argues that the issues in controversy between the parties do not involve the extent to which any of the vessels were damaged, but rather the proper interpretation of the policy. The Court agrees, but this circumstance does not favor either forum.

Bassett contends that a trial in Providence imposes a significant burden on Bassett and its officers and employees. However, the driving distance between Springfield and Providence is only about 85 miles over good highways. Moreover, Bassett's showroom in Warwick is even a greater distance from Springfield than this courthouse, and presumably at least some of Bassett's officers and employees manage to make that trip occasionally

during the course of their duties or employment. The Court is unpersuaded that a trial in Providence imposes an unreasonable burden on Bassett. Cf. Jenkins v. Wilson Freight Forwarding Co., 104 F.Supp. 422, 425 (S.D.N.Y. 1952)("[Section 1404(a)] was designed and reserved for those instances where the transfer was sought to a District Court substantially distant from the district where the action had been instituted; otherwise it is difficult to image that there could be real inconvenience to the parties or witnesses.").

Bassett additionally asserts that testimony from its officers and employees located in Springfield is extremely relevant to the issues in this case, but the court has doubts that this is so. The only issue which Bassett identifies as requiring testimony from any of these individuals is "the actual cash value" of the damaged vessels. Bassett Zable Aff. ¶ 8; see also id. ¶ 11. If this is indeed an issue, it seems likely that NHIC's witnesses who are knowledgeable regarding the value of salt water vessels are more likely to be found in Rhode Island or Connecticut than in the vicinity of Springfield, Massachusetts. Cf. Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F.Supp.2d 31, 38 (D.R.I. 2003)("Inconvenience to the defendant is not sufficient to grant § 1404(a) relief, where the transfer would merely shift the inconvenience to the other party.").

The other factors which the Court is directed to consider, see McEvily, 878 F.Supp. at 343-44 (listing the private and public interests that courts consider in deciding motions to transfer pursuant to § 1404(a)), do not strongly favor transfer. Given the nature of the controversy, it seems unlikely that there will be any unwilling witness in this action. To the extent that there may be, such witnesses will more likely be found in Rhode Island than in Massachusetts as the loss and repairs occurred here. The cost of obtaining willing witnesses, including those

located in Springfield, does not significantly favor one district over the other. Although Bassett suggests that relevant records are located in Springfield, presumably they were transported to that location from Warwick, Rhode Island, and could be transported to Providence without undue effort. To the extent that such records were created in Springfield, they could still be transported to Providence relatively easily. While it seems improbable that a view would be required in this action, to the extent that this possibility exists, it favors Rhode Island as well.

Regarding the public interests, to the extent that Massachusetts law governs the interpretation of the Policy, this factor favors transfer. However, this Court is fully capable of determining and applying the applicable law, see Brian Jackson & Co., 248 F.Supp.2d at 39, and, thus, this consideration does not weigh significantly in favor of transfer. Bassett argues that "Massachusetts has developed a strong policy with respect to choice-of-law analysis in cases involving disputes over multistate insurance policies ...," Memorandum of Law in Support of Motion to Transfer Venue of Defendant Bassett Boat Company, Inc. ("Defendant's Transfer Mem.") at 12, and asserts that Bassett, as a Massachusetts corporation with a principal place of business in Massachusetts and the majority of its operations there, "has a legitimate expectation that the Massachusetts rule with respect to choice-of-law analysis in a dispute over a multistate insurance contract will be applied in any dispute over the interpretation of the Policy, and that the insurer will not be permitted to forum shop for a different and perhaps more favorable rule," id. at 12-13. However, the Court has rejected Bassett's argument that NHIC is guilty of forum shopping, and the Court is confident that it can properly apply the appropriate conflict of law analysis.

As for the factor of having localized controversies decided at home, while Bassett is a Massachusetts corporation, the loss occurred in Rhode Island as did the repairs. This is not an action which has little or no connection with this state. As for the burden of jury duty, most Rhode Islanders would not think it unusual that a case involving a loss at a Warwick marina would be tried in this district, and they would not consider it an imposition to be asked to serve as jurors deciding such a case.

After considering all of the relevant factors, the Court finds that Bassett has not met its burden of showing a strong balance of inconvenience if this action remains in Rhode Island. Accordingly, the Motion to Transfer is denied.

## II. Motion to Sever

Relying on Fed. R. Civ. P. 42(b),[5] NHIC seeks to sever Bassett's bad faith counterclaims from the remaining declaratory judgment and breach of contract claims and stay discovery with respect to the bad faith counterclaims until the contract claim is resolved. NHIC notes that two rationales justify severance of bad faith claims from contract claims against an insurer: 1) avoidance of undue prejudice to the insurer, and 2) promotion of judicial economy. See Counterclaim Defendant New Hampshire Insurance Company's Memorandum in Support of Its Motion to Sever Claims and to Stay Discovery of the Severed Claims ("NHIC Sever

---

[5] Fed. R. Civ. P. 42(b) states:

> Separate Trials. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b).

Mem.") at 3 (citing Am. Nat'l Red Cross v. Travelers Indem. Co. of R.I., 924 F.Supp. 304, 308 (D.D.C. 1996); Cook v. United Servs. Auto. Ass'n, 169 F.R.D. 359, 362 (D. Nev. 1996); Skaling v. Aetna Ins. Co., 799 A.2d 997, 1010 (R.I. 2002); Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997, 1002 (R.I. 1988) (abrogated on other grounds by Skaling, 799 A.2d at 1007-10)). NHIC contends that it would be substantially prejudiced if Bassett's bad faith counterclaims are not severed and stayed until the underlying breach of contract claims are resolved. See id. NHIC observes that insurance bad faith claims usually require production of the entire claims file and such files often contain attorney-client communications and documents prepared in anticipation of litigation regarding the dispute over policy interpretation. Id. (citing Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 173 F.R.D. 7, 11 (D. Mass. 1997); Barlett, 538 A.2d at 1001). The potential for prejudice by the disclosure of such documents was noted by the Rhode Island Supreme Court in Bartlett:

> [W]hile the liability under the contract for insurance is still at issue, certain documents in defendant's claim file are protected by the qualified privilege of Rule 26(b)(2). To grant total access to an insurer's claim file at this stage in the proceedings would irreparably prejudice the insurer's ability to defend itself on the contract.

Bartlett, 538 A.2d at 999-1000 (footnote omitted).

With regard to judicial economy, NHIC argues that the success of the bad faith claims depends largely on the outcome of the separate breach of contract claims. If the insured is unsuccessful on its contract claim, NHIC posits that the success of the bad faith claim is highly improbable, if not impossible.

Bassett responds that NHIC's concerns about prejudice can be addressed by measures other than severance and that NHIC's

judicial economy argument does not apply to the instant case. Regarding the latter consideration, Bassett argues that Counts two and three of its counterclaim arise only in part from the failure of NHIC to fully compensate Bassett under the Policy. In count two, Bassett alleges that NHIC breached the covenant of good faith and fair dealing implied in the Policy as a result of certain conduct in which NHIC engaged in connection with the conveyance by Bassett of one of the boats that was damaged in the storm and declared a total loss by NHIC. In count three, Bassett alleges that NHIC's bad faith failures both to resolve the coverage issues and to deal properly with Bassett in connection with the conveyance violate Mass. Gen. Law Chapter 93A, Section 11. Thus, Bassett asserts that the primary justification for severance in the cases cited by NHIC is non-existent with respect to count two of Bassett's counterclaim and partly inapplicable with respect to count three.

The Court finds Bassett's argument on this point persuasive. The Court agrees that a favorable decision for NHIC on its declaratory judgment action will not entirely resolve Bassett's counterclaims, and those claims will still have to be tried (although they would be narrowed considerably). Accordingly, the justification of judicial economy as a reason for severance is not present here.

As for the other justification, the potential prejudice to NHIC as a result of discovery, Bassett argues that the Court can enter appropriate orders relating to such discovery when and if the issue actually arises. While the Court has doubts that this problem can be handled as easily as Bassett appears to suggest, the Court agrees that the issue has not yet arisen. The Court is willing to give Bassett the opportunity to demonstrate that limitations, restrictions, and/or methods can be fashioned which will avoid the prejudice to NHIC which in the past has caused

other courts to grant severance. If the Court is unpersuaded that such approaches will avoid prejudice to NHIC, severance remains an option.

As for NHIC's argument that certain attorneys (who are representing it in this action) had involvement with the handling of Basset's claim and that they could become fact witnesses and be forced to withdraw if the bad faith counterclaims are not severed and stayed, the Court is not convinced that this is a reason to grant severance. NHIC's decision to involve these attorneys in the claims handling process was its choice. By doing so, it ran the risk that they could become fact witnesses.

Finally, the Court is also influenced by Bassett's plea that if it is going to be required to try this action in Rhode Island, then at least it should not be required to try it twice. Before imposing that additional burden on Bassett, the Court wishes to be sure that there are no other satisfactory alternatives to severance. As the Court is not so convinced (at this point), the Motion to Sever is denied.

**Conclusion**

For the reasons stated in Part I above, the Motion to Transfer is denied. For the reasons stated in Part II above, the Motion to Sever is denied.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
July 11, 2008